IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMBRE BODLE, LESLIE MEECH, LORI PRINCE, and on behalf of all other similarly situated persons, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. H-12-1515 |
| TXL MORTGAGE CORPORATION, and WILLIAM DALE COUCH, individually, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiffs' Emergency Motion for Class Certification and Notice to Potential Class Members (Doc. 11) and Defendants' Motion for Summary Judgment on Ambre Bodle and Leslie Meech's Claims (Doc. 21).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiffs' motion be **DENIED** and that Defendants' motion be **GRANTED**.

### I.  Case Background

Plaintiffs, individually and on behalf of all other similarly situated persons, filed this action against TXL Mortgage Corporation and William Dale Couch (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 24.

seq., alleging that Defendants denied them overtime compensation at the federally mandated rate and failed to maintain adequate records of hours worked by their employees.  Plaintiffs assert that the pay practices maintained by Defendants, which denied them overtime pay, also affected other employees in similar positions.

## A.  **Procedural History**

On or about February 3, 2012, Defendant TXL Mortgage Corporation ("TXL") filed suit against Plaintiffs Ambre Bodle ("Bodle") and Leslie Meech ("Meech"), alleging several state law causes of action arising from Bodle and Meech's alleged violation of nondisclosure, nonsolicitation, and noncompete covenants provided in their employment contracts ("Prior Action").[2]  TXL sought injunctive relief and recovery of damages.[3]  Bodle and Meech filed an answer to TXL's petition and counterclaimed for declaratory judgment as to the unenforceability of the covenant not to compete.[4]  About a month after the Prior Lawsuit was filed, on March 8, 2012, the state court entered an agreed temporary injunction that prohibited Bodle and Meech from soliciting several

---

[2]    See Doc. 21-2, Ex. A-1 to Defs.' Mot. for Summ. J., Defs.' Orig. Pet. Filed in 281st Judicial District Ct., ¶ 24. Specifically, Defendants alleged causes of action for breach of contract, breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business relationships, misappropriation of trade secrets, conversion, violation of the Texas Theft Liability Act, civil conspiracy, and unjust enrichment.  See id. ¶¶ 25-34.

[3]    See id. ¶¶ 35, 38-45.

[4]    See Doc. 21-3, Ex. A-2 to Defs.' Mot. for Summ. J., Pls.' Orig. Ans. & Countercl. in Prior Action.

of TXL's customers.[5]   After reaching a settlement agreement, the parties jointly filed an agreed final judgment on May 16, 2012, which the court entered one week later.[6]   On the same day that the parties filed their agreed final judgment in the Prior Action, Plaintiffs filed the present lawsuit against Defendants, alleging willful FLSA violations under 29 U.S.C. §§ 207(a)(1) and 211(c).[7] About two months later, on July 13, 2012, Plaintiffs filed the pending motion for conditional class certification,[8] seeking to certify the following class:

> All current and former loan officers, account managers, loan processors, closing managers and credit repair specialists who were employed at any time from May 18, 2009 to present by TXL Mortgage Corporation and who were not paid at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.[9]

In the motion, Plaintiffs ask the court to: (1) conditionally certify this suit as a collective action; (2) authorize Plaintiffs to send an approved notice to potential class members; and (3) order Defendants to produce the full name, last known address and

---

[5]     See Doc. 21-4, Ex. A-3 to Defs.' Mot. for Summ. J., Mot. for Entry of Agreed Temp. Inj.

[6]     See Doc. 21-11, Ex. A-10 to Defs.' Mot. for Summ. J., Joint Mot. for Entry of Agreed Final J.; Doc. 21-12, Ex. A-11 to Defs.' Mot. for Summ. J., Entry of Agreed Final J.

[7]     See Doc. 1, Pls.' Compl.

[8]     See Doc. 11, Pls.' Mot. for Class Cert.

[9]     Id. at p. 13.  The court notes that Plaintiffs' complaint sought a collective action that included only "[a]ll current and former loan officers, account managers and loan processors."  Doc. 1, Pls.' Compl., ¶ 31.

3

telephone number, and dates and location of employment for all potential class members.[10]

On August 3, 2012, Defendants filed a response in opposition to Plaintiffs' motion for conditional class certification.[11]  Two weeks later, on August 17, 2012, Defendants filed the pending motion for summary judgment, to which Plaintiffs responded on September 7, 2012.[12]

**B.   Factual History**

**1.  Plaintiffs' Employment with Defendants**

Defendants are engaged in the business of retail mortgage banking and construction loan services in Texas.[13]  In order to provide its mortgage and construction lending services, Defendants employ executives, loan officers, loan processors, lead processors, account managers, closing managers, and credit repair specialists.[14] Bodle and Meech began their employment with Defendants in 2002 and 2003, respectively, as loan processors.[15]  In 2003, Bodle and Meech

---

[10]     See Doc. 11, Pls.' Mot. for Class Cert.

[11]     See Doc. 20, Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class; see also Doc. 22, Pls.' Reply to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class.

[12]     See Doc. 21, Defs.' Mot. for Summ. J.; Doc. 26, Pls.' Resp. to Defs.' Mot. for Summ. J.; see also Doc. 28, Defs.' Reply in Support of Mot. for Summ. J.; Doc. 29, Pls.' Sur-reply to Defs.' Mot. for Summ. J.

[13]     See Doc. 20-1, Ex. A to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, John Ecoff Aff., ¶ 3.

[14]     See id. ¶ 4.

[15]     See Doc. 11-2, Ex. B to Pls.' Mot. to Certify Class, Ambre Bodle Aff., ¶ 6; Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 6.

were promoted to loan officers and were working as Vice Presidents of TXL at the time of their separation from Defendants in late 2011.[16]   Plaintiff Lori Prince ("Prince") started her employment with Defendants in 2004 as a loan processor and held the position of lead processor or account manager at the time of her separation from Defendants in late 2011.[17]

Defendants attest that, as Vice Presidents, Bodle and Meech were each responsible for operation of the company, including company policies and production; participated in preparing the compensation plan for loan officers and loan processors; and managed loan officers.[18]   Meech also "directed training and oversaw underwriting and human resources functions," and was responsible for company licensing.[19]

As mortgage loan officers, Bodle and Meech's primary duties consisted of "selling and closing residential mortgage loans."[20] Plaintiff Prince's job duty as a loan processor was to "assist loan officers in processing and closing mortgage loans by performing

---

[16]     See Doc. 11-2, Ex. B to Pls.' Mot. to Certify Class, Ambre Bodle Aff., ¶ 7; Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 7; Doc. 20-1, Ex. A to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, ¶¶ 5, 7.

[17]     See Doc. 11-6, Ex. F to Pls.' Mot. to Certify Class, Lori Prince Aff., ¶¶ 6, 10; Doc. 20-1, Ex. A to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, John Ecoff Aff., ¶ 12.

[18]     See Doc. 20-1, Ex. A to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, John Ecoff Aff., ¶¶ 5, 7.

[19]     See id. ¶ 7.

[20]     Doc. 11-2, Ex. B to Pls.' Mot. to Certify Class, Ambre Bodle Aff., ¶ 8; Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 8.

general data entry and filing duties."[21]  Prince was instructed by a supervisor not to claim overtime when she first began working as a loan processor.[22]  Upon receiving the job title of account manager, Prince was "given the added duty of processing closing documents," which consisted of entering data into Defendants' computer system, and was supervised by a closing manager.[23]  At some point during her employment, Prince was required to sign an agreement stating that she would not be paid overtime.[24]  After becoming an account manager, Prince was told by Defendants that she was no longer eligible for overtime.[25]

According to Plaintiffs, the job duties of closing managers included "assisting with and supervising the closing of mortgage loans," and the job duties of credit repair specialists consisted of "assisting borrowers with repairing their credit history in order to become eligible for mortgage loans with [Defendants]."[26] Plaintiffs allege that they and potential class members shared the

---

[21]    Doc. 11-6, Ex. F to Pls.' Mot. to Certify Class, Lori Prince Aff., ¶ 7.

[22]    See id. ¶ 8.

[23]    Id. ¶¶ 9-10.

[24]    See id. ¶ 12.

[25]    See id. ¶ 10.

[26]    Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 13.

similar duty of closing and servicing residential mortgage loans.[27] Plaintiffs allege that they, along with similarly situated employees, were not paid at a rate of one and one-half times their regular rate for every hour worked in excess of forty per week.[28]

### 2.  Events Related to the Prior Action

Prior to the commencement of this lawsuit, Plaintiffs Bodle and Meech were defendants in the Prior Action filed in state court by TXL.  As noted above regarding the Prior Action, TXL raised several state causes of action against Bodle and Meech arising from their alleged breach of the nondisclosure, nonsolicitation and noncompete covenants of their employment contracts; Bodle and Meech sought a declaration that the noncompete covenant was unenforceable.[29]

The parties in the Prior Action entered into settlement negotiations, and, on or about May 3, 2012, TXL's attorney emailed a proposed settlement agreement to Bodle and Meech's attorney.[30] The same day, Bodle and Meech's attorney responded that "[i]t

---

[27]    See Doc. 11-2, Ex. B to Pls.' Mot. to Certify Class, Ambre Bodle Aff., ¶ 13; Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 13.

[28]    See Doc. 11-2, Ex. B to Pls.' Mot. to Certify Class, Ambre Bodle Aff., ¶¶ 9, 13-15; Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶¶ 9, 12, 14-15; Doc. 11-6, Ex. F to Pls.' Mot. to Certify Class, Lori Prince Aff., ¶ 11.

[29]    See Doc. 21-2, Ex. A-1 to Defs.' Mot. for Summ. J., Defs.' Orig. Pet. Filed in 281st Judicial District Ct.; Doc. 21-3, Ex. A-2 to Defs.' Mot. for Summ. J., Pls.' Orig. Ans. & Countercl. in Prior Action.

[30]    See Doc. 21-1, Ex. A to Defs.' Mot. for Summ. J., Nitin Sud Aff., ¶ 5.

7

appears both clients have some claims to commissions they are owed, and [ ] Bodle was also not paid her last 6 weeks of salary."[31] Continuing, the attorney stated, "Considering you and I have not discussed this issue, I don't know if you want to carve this out of the settlement agreement and deal with later or address it now."[32]

In a responding email, TXL denied that Bodle and Meech were "entitled to any compensation for wages."[33]   Opposing counsel followed up with an email explaining the basis for Bodle and Meech's claims for wages and commissions allegedly owed by TXL and asserting as follows:

> I plan on filing counterclaims tomorrow and asking for attorneys' fees for breach of contract and under the Texas Payday Act.  Also, this [denial of wages and commissions] apparently happened to all the other Loan Officers at TXL, so they may want to join in once they catch wind of it. [Bodle and Meech], however, are willing to walk away from about $120,000 of commission and salary they are owed for a lesser injunction.[34]

TXL acknowledged the existence of "a dispute as to facts surrounding [Bodle and Meech's] wage claims," and countered that TXL's potential damages arising from its causes of action exceeded

---

[31]    Doc. 21-8, Ex. A-7 to Defs.' Mot. for Summ. J., Email Exchange Dated May 3, 2012.

[32]    Id.

[33]    Doc. 21-8, Ex. A-7 to Defs.' Mot. for Summ. J., Email Exchange Dated May 7, 2012.

[34]    Id.

8

Bodle and Meech's alleged wage claims.[35]

The parties ultimately reached an agreed settlement, under which Plaintiffs agreed to pay TXL $5,000 and TXL agreed to remove one company, Beazer Homes, from a list of companies that Bodle and Meech were temporarily enjoined from soliciting in exchange for the other party's release of claims.[36]   Pursuant to the settlement agreement, Bodle and Meech agreed to release:

> any and all actual or potential claims, demands,
> actions, causes of action, and liabilities of any
> kind or nature, whether known or unknown, including
> but not limited to all claims and causes of action
> that were or could have been asserted in the [Prior
> Action] and all claims and causes of action related
> to or in any way arising from [Bodle and Meech's]
> employment with TXL, whether based in tort, contract
> (express or implied), warranty, deceptive trade
> practices, or any federal, state or local law,
> statute, or regulation.[37]

The settlement agreement was fully executed on May 14, 2012, and, that same day, the parties filed a motion for entry of agreed final judgment with the state court.[38]   The agreed final judgment was entered on May 23, 2012.[39]

---

[35]    Doc. 21-8, Ex. A-7 to Defs.' Mot. for Summ. J., Email Exchange Dated May 8, 2012.

[36]    See Doc. 21-8, Ex. A-7 to Defs.' Mot. for Summ. J., Email Exchange Dated May 8-9, 2012; see generally Doc. 21-10, Ex. A-9 to Defs.' Mot. for Summ. J., Confidential Settlement Agreement.

[37]    Doc. 21-10, Ex. A-9 to Defs.' Mot. for Summ. J., Confidential Settlement Agreement, ¶ 4.

[38]    See Doc. 21-1, Ex. A to Defs.' Mot. for Summ. J., Nitil Sud Aff., ¶¶ 16-17.

[39]    See Doc. 21-12, Ex. A-11 to Defs.' Mot. for Summ. J., Entry of Agreed Final J.

## II.  Defendants' Motion for Summary Judgment

### A.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled

10

to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

11

will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S.
at 322.

**B.** <u>**Analysis**</u>

Defendants move for summary judgment on Plaintiffs Bodle and
Meech's FLSA claims on the grounds that: (1) Bodle and Meech's FLSA
claims are precluded by the doctrine of res judicata; (2) Bodle and
Meech executed a valid and enforceable waiver in the Prior Action,
releasing all claims against Defendants that arose from the
parties' employment relationship; and (3) Bodle and Meech are
collaterally estopped from asserting their FLSA claims.  Finding
Defendants' second argument dispositive, the court's analysis
begins and ends with consideration of that argument.

The Fifth Circuit has held that parties may enter into
enforceable private agreements settling FLSA claims when a bona
fide dispute as to liability exists. <u>Martin v. Spring Break '83
Prods., L.L.C.</u>, 688 F.3d 247 (5th Cir. 2012).  In <u>Martin</u>, the
plaintiffs, technicians in the video production industry, were
members of a union that had entered into a collective bargaining
agreement ("CBA") with the defendant video producer. <u>Id.</u> at 249.
The plaintiffs, among others, filed a grievance with the union
regarding the defendant's alleged failure to pay wages for work
performed by the plaintiffs. <u>Id.</u>  Following an inconclusive
investigation, the union entered into a settlement agreement with
the defendant as to the disputed compensation due to the plaintiffs

12

for hours worked.  <u>Id.</u>  Nonetheless, prior to the agreement's execution, the plaintiffs filed a lawsuit against the defendant and others to recover wages under the FLSA.  <u>Id.</u> at 249-50.

Considering the plaintiffs' argument that their FLSA claims were not released by the settlement agreement reached by the union and the defendant, the Fifth Circuit agreed with the district court's holding that the plain language of the settlement agreement was binding on the plaintiffs and precluded their filing an FLSA claim against the defendant after receiving settlement payments pursuant to the terms of the settlement agreement.  <u>Id.</u> at 253-54. In reaching its decision, the court approved of the rationale expounded by <u>Martinez v. Bohls Bearing Equip. Co.</u>, 361 F. Supp. 2d 608, 634 (W.D. Tex. 2005), which concluded that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due."  <u>Id.</u> at 255 (quoting <u>Martinez</u>, 361 F. Supp. 2d at 631); <u>see also</u> <u>Martinez</u>, F. Supp. 2d at 634 ("a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability.").  A release in compliance with such a compromise is enforceable.  <u>See</u> <u>Martin</u>, 688 F.3d at 255; <u>Martinez</u>, 361 F. Supp. 2d at 631.

Here, Plaintiffs ask the court to read the plain language of the settlement agreement executed in the Prior Action, in which Bodle and Meech released "any and all actual or potential claims .

. . . related to or in any way arising from [Bodle and Meech's] employment with TXL, whether based in . . . any federal, state or local law, statute, or regulation," as excluding FLSA claims.[40]  The court is disinclined to do so.

During the settlement negotiations of the Prior Action, Bodle and Meech, represented by counsel, raised the issue of wages in the form of unpaid regular wages, namely, commissions and salary.  TXL contended that neither Bodle nor Meech were entitled to any compensation.  Nonetheless, because their claims for unpaid wages were raised during settlement negotiations, Bodle and Meech were able to negotiate a less restrictive injunction than previously proposed by TXL.  They then proceeded to sign a release of "all claims and causes of action related to or in any way arising from [Bodle and Meech's] employment with TXL, whether based in . . . any federal state or local law, statute, or regulation."[41]

At least a week prior to the execution of the settlement agreement, however, Bodle and Meech were aware that they had claims for unpaid overtime compensation, as evidenced by their signing consent forms to join the pending lawsuit to recover overtime wages before signing and executing the settlement agreement in the Prior Action.  Though aware of the existence of alleged overtime compensation due to them, Bodle and Meech opted to remain silent as

---

[40]    Doc. 21-10, Ex. A-9 to Defs.' Mot. for Summ. J., Confidential Settlement Agreement, ¶ 4.

[41]    Id.

to these wages during the negotiation process.[42]   Plaintiffs now contend that wages derived from commissions and salary are separate and distinct from wages for overtime and, thus, claims for the latter were not released by Bodle and Meech in the settlement agreement.   The court disagrees.   That wages for commissions and salary are not the same as wages for overtime does not alter the fact that each constitutes a form of wages.

Given the aforementioned negotiations regarding regular wages, the court finds that the settlement negotiations in the Prior Action involved a bona fide dispute as to the wages owed by TXL to Bodle and Meech.   See Martinez, 361 F. Supp. 2d at 631 ("parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to . . . compensation due.").[43]   It was Bodle and Meech's prerogative to either carve claims for overtime wages from the settlement agreement or to raise such claims during negotiations prior to executing the settlement agreement.   Instead, Bodle and Meech opted to remain silent on their known cause of action to recover unpaid overtime wages.   Because the parties

---

[42]     Plaintiffs claim that Defendants knew of their alleged FLSA violations before filing suit in the Prior Action and that TXL "chose to conceal those [FLSA] issues in an effort to hide behind a settlement agreement in hopes that these FLSA violations would disappear forever."   Doc. 26, Pls.' Resp. to Defs.' Mot. for Summ J.   In support, Plaintiffs cite affidavit testimony from their counsel that he "had evidence that this was indeed the case and that TXL and Mr. Sud's law firm knew of these FLSA violations."   Doc. 26-1, Ex. A to Pls.' Resp. to Defs.' Mot. for Summ. J., Richard P. LeBlanc III Aff., ¶ 9.   Plaintiffs have failed to produce competent summary judgment evidence of this assertion that goes beyond mere conclusory allegations.   See Brown, 337 F.3d at 541.

[43]     Indeed, from Plaintiffs' point of view, it appears a bona fide dispute between the parties existed even as to unpaid overtime under the FLSA given Plaintiffs' initiation of the pending lawsuit.

disputed wages during the settlement negotiations, Bodle and Meech cannot now claim that their release of "all claims and causes of action related to or in any way arising from [Bodle and Meech's] employment with TXL, whether based in . . . any federal state or local law, statute, or regulation" did not encompass a claim for unpaid wages, whatever its basis.[44]

The court therefore finds that Bodle and Meech released their present claims against Defendants in the settlement agreement executed in the Prior Action.  Accordingly, the court **RECOMMENDS** that Defendants' motion for summary judgment against Plaintiffs Bodle and Meech be **GRANTED**.

### III.  Plaintiffs' Motion for Class Certification

#### A.  Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees

---

[44]     Doc. 21-10, Ex. A-9 to Defs.' Mot. for Summ. J., Confidential Settlement Agreement, ¶ 4.  Under the auspices of distinguishing the facts underlying the Prior Action from those of Martin, Plaintiffs point to the following: (1) the settlement agreement in Martin was reached after the filing of an FLSA lawsuit; (2) the settlement agreement specifically referenced disputes under the FLSA; and (3) the settlement agreement required the employer to pay money to the employees.  The Fifth Circuit did not limit its holding in Martin to the specific facts articulated above and these facts are not material to the court's determination of the existence of a bona fide dispute as to wages or compensation owed in the present case.  The court therefore finds Plaintiffs' argument on this point to be without merit.

similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990).  See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[45]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class."  Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14).  The

---

[45]     Mooney v. Aramco Services Co. was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees.  See Mooney, 54 F.3d at 1212.

court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n.8.  If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit.  Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214).  Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action.  Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA].  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between a . . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its

18

results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

_Mooney_, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b).  _Acevedo_, 600 F.3d at 518-19.  Although it has stated that not all class action standards are applicable to Section 216(b) actions, it has explicitly left open the question of whether the _Lusardi_ approach, the _Shushan_ approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action.  _Id._ (citing _Mooney_, 54 F.3d at 1216; _LaChapelle v. Owens-Ill., Inc._, 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the _Lusardi_ approach in suits under Section 216(b).  _See, e.g._, _Tolentino v. C & J Spec-Rent Servs., Inc._, 716 F.Supp.2d 642, 646 (S.D. Tex. 2010) (collecting cases).  The _Lusardi_ approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed.  _Sandoz v. Cingular Wireless LLC_, 553 F.3d 913, 915 n.2 (5th Cir. 2008).  The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the

19

"opt-out" procedure for class members under Rule 23 as opposed to the "opt-in" procedure under Section 216(b). <u>LaChapelle</u>, 513 F.2d at 288; <u>see also</u> <u>Donovan v. Univ. of Tex. at El Paso</u>, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the <u>Lusardi</u> method.

The present case is at the "notice stage" of the <u>Lusardi</u> analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. <u>Mooney</u>, F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the <u>Lusardi</u> analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiffs in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. <u>See, e.g.</u>, <u>Cantu v. Vitol, Inc.</u>, No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); <u>Tolentino</u>, 716 F.Supp.2d at 653. Other courts, however, have

20

rejected the third, non-statutory element.  See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees with the latter camp that Plaintiffs need not present evidence of the third element at this stage of the certification process.  There are several reasons for this.  First, as already stated, this element is not a statutory requirement at this stage.  See 29 U.S.C. § 216(b).  Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited.  Rather, the Fifth Circuit's discussion of the Lusardi approach only requires, at the first stage, that "putative class members' claims [be] sufficiently similar to merit sending notice of the action to possible members of the class."  See Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14).

Third, unlike under Rule 23, there is no numerosity requirement in an FLSA class action lawsuit under the Lusardi approach.  See, e.g., Badgett v. Tex. Taco Cabana, L.P., No. Civ.A.H 05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (unpublished) (citing Mooney, 54 F.3d at 1214, n.8) ("[A]t the notice stage [in an FLSA action using the Lusardi approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single

decision, policy, or plan." (internal quotations omitted)).

Finally, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985). Liberally construing the FLSA to effect its purposes, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit.

**B. <u>Analysis</u>**

In accordance with the determination that Defendants are entitled to summary judgment against Plaintiffs Bodle and Meech, the court finds that Bodle and Meech are not appropriate class representatives in this action. Nonetheless, the court will consider the affidavit testimony of Bodle and Meech in determining whether to grant conditional class certification.

Defendants urge the court to reject Plaintiffs' request for conditional class certification. They argue that Plaintiffs have failed to satisfy the second element of the <u>Lusardi</u> test, that potential class members are similarly situated in relevant respects given the claims and defenses asserted. Specifically, Defendants contend that Plaintiffs cannot show that similarly situated

potential class members were the victims of a single decision,
policy, or plan.  Plaintiffs respond that they have provided
sufficient evidence to establish that they, and other similarly
situated potential class members, were victims of a single unlawful
decision, policy, or plan of Defendants.  The court considers the
parties' arguments.

With regard to the existence of a single decision, policy, or
plan of which Plaintiffs and potential class members were victims,
Plaintiffs assert that they were all non-exempt employees who
worked over forty hours per week during the past three years and
were denied overtime at one and one-half times their regular rate.[46]
According to Plaintiffs, the employees allegedly subject to this
practice include loan officers, loan managers, loan processors,
closing managers, and credit repair specialists, all of whom
performed the same or similar duty of closing and servicing
residential mortgage loans.

Potential class members are considered similarly situated to
the named plaintiffs if they are "'similarly situated' with respect
to their job requirements and with regard to their pay provisions.
The positions need not be identical, but similar." Yaklin v. W-H
Energy Servs., Inc., No. C-07-422, 2008 WL 1989795, at *2 (S.D.
Tex. May 2, 2008) (unpublished) (internal quotations and citations

---

[46]     Plaintiffs also appear to contend that they "were misclassified and
were not paid for all the overtime hours they worked." Doc. 22, Pls.' Reply to
Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, p. 3.  Plaintiffs do not
further elaborate on this theory.

omitted).  When "the named plaintiffs and potential class members are compensated differently, class certification is inappropriate." Green v. Plantation of La., LLC, 2010 WL 5256354, at *4 (W.D. La. Nov. 24, 2010) (unpublished).

Here, Defendants have produced evidence that loan officers, loan processors, lead processors and account managers, and credit repair specialists were subject to different compensation schemes. In particular, prior to April 2011, some loan officers were paid on a salary or guaranty basis, others received commissions, and yet others received both commissions and a salary or guaranty; after April 2011, loan officers were paid a salary, commissions, and overtime.[47]  During the past two-to-three years, employees of Defendants were paid as follows: loan processors received a salary and overtime, with some bonuses and commissions; all lead processors or account managers were paid salary and commissions, and some were paid overtime based on agreements entered into with Defendants; closing managers and credit repair specialists received a salary and overtime.  Additionally, the evidence produced by Plaintiffs indicates that some potential class members were

---

[47]     Plaintiffs argue that, in April 2011, Defendants changed their compensation structure for loan officers to include overtime compensation because Defendants realized that they had misclassified their loan officers.  See Doc. 22, Pls.' Reply to Defs.' Resp. in Opp'n to Pls.' Mot. to Certify Class, p. 2. Therefore, Plaintiffs conclude, Defendants admitted that they failed to compensate their loan officers for overtime during the past three years.  Id. The court refuses to speculate on the reasons behind the change in the loan officers' payment scheme as the class certification stage is not "an opportunity for the court to assess the merits of the [FLSA] claim." McKnight v. D. Houston, Inc., 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010).

required to submit weekly handwritten timesheets for their hours worked while others were not required to turn in any form of timesheet.  Such differences in compensation structures between and among potential class members' job classifications are not amenable to class action treatment.

Further, although the potential class members worked toward the end of servicing and processing residential mortgage loans, the evidence indicates that job duties varied by job classification. Loan officers, for instance, sold and closed residential mortgage loans whereas credit repair specialists interfaced with potential borrowers and performed duties to repair those individuals' credit history in order that they might qualify for a loan.  In contrast, loan processors assisted loan officers by "performing general data entry and filing duties,"[48] while account managers processed closing documents by entering information on Defendants' computer system, and closing managers "assist[ed] with and supervis[ed] the closing of mortgage loans."[49]  The job duties among potential class members thus vary significantly.  To the extent Plaintiffs allege that members of the potential class engaged in the same or similar duties, the court would be required to engage in an individualized assessment as to each potential plaintiff's job duties.

---

[48]    Doc. 11-6, Ex. F to Pls.' Mot. to Certify Class, Lori Prince Aff., ¶ 7.

[49]    Doc. 11-4, Ex. D to Pls.' Mot. to Certify Class, Leslie Meech Aff., ¶ 13.

The individualized, factual determination that would be required given the difference in job duties and pay arrangements among potential class members would contravene a primary purpose behind class action lawsuits, i.e., the promotion of judicial economy. See Jones v. Diamond, 519 F.2d 1090, 1099 (5th Cir. 1975); Andel v. Patterson-UTI Drilling Co., LLC, 280 F.R.D. 287, 290 (S.D. Tex. 2012). The court therefore finds that Plaintiffs have failed to establish that putative class members are similarly situated in terms of job requirements and pay provisions for purposes of class action certification. Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for conditional class certification be **DENIED**.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiffs' Emergency Motion for Class Certification and Notice to Potential Class Members be **DENIED** and that Defendants' Motion for Summary Judgment on Ambre Bodle and Leslie Meech's Claims be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of October, 2012.

Nancy K. Johnson
United States Magistrate Judge